February 12, 1861.

## SUPREME COURT—IN ADMIRALTY.

### W. E. HALIDAY *vs.* WILLIAM STOTT.

WHERE the defendant, as master of a packet running to California, had conveyed a debtor of the plaintiff out of the Kingdom, without a passport, as required by Sec. 651 of the Civil Code, and for justification pleaded that he had no knowledge of the indebtedness, nor of the debtor being on board : *Held*, that unless a careful diligence had been shown, such as the thorough and faithful search of the vessel, previous to passing the boundaries of the jurisdiction of the Kingdom, the master, under the provisions of the statute, would be liable for the debt.

ALLEN, C. J.

The libellant alleges, substantially, that M. M. Webster, late of Honolulu, was indebted to him in the sum of $64, for work and labor, and fearing that he might leave the Kingdom with-

out paying his indebtedness, he filed a written notice thereof with the Collector General of Customs, accompanied by a request that he would not grant him a passport, and that, subsequently, William Stott, master of the bark "Comet," conveyed out of the Kingdom said Webster, who had not obtained a passport to leave the Kingdom, as required by law, and said libellant now claims that said respondent has rendered himself liable to pay the debt which Webster owed him.

The respondent answers that he had no knowledge of the indebtedness of Webster to the libellant, and that he did not voluntarily or knowingly carry said Webster out of this Kingdom on board of the bark "Comet," or that he had any knowledge of said Webster's leaving the Kingdom without a passport, as required by law. He answers further that he took command of the vessel, on two or three hours' notice, by request of the master and agents, for a voyage to California and back, without any knowledge of the persons on board, either as passengers or sailors, and that he proceeded to sea about two o'clock on Saturday, the 8th of September last, and that in two hours thereafter the bark was beyond the jurisdiction of this Kingdom ; and further, that he did not know that said Webster was on board till the Monday evening following, when the vessel was some four or five hundred miles from this Kingdom, and it was impracticable to return without great loss and damage. The provision of the Code under which the respondent is sought to be made liable is in these words :

"Every master or commanding officer of a vessel, who shall convey out of this Kingdom any person not having a passport, shall be subject to a fine of fifty dollars, and be liable for all debts which such person may have left unpaid in this Kingdom ; and if he shall fail to pay such fine and debts, such vessel shall be subject to seizure, condemnation and sale for the payment thereof ; *provided, always,* that none of the provisions of this section, or article, shall be construed as applicable to any seaman legally shipped on board of any vessel." (Sec. 651, Civil Code.)

Satisfactory evidence was adduced that Webster was indebted to Haliday as alleged, and it was admitted that written notice had been given to the Collector General by three per-

sons, alleging the indebtedness of Webster, and accompanied by a request not to grant him a passport, and that the libellant was one of those persons. It is further admitted that Webster did not obtain a passport as required by law, and that it was notorious in the community that he had attempted to get away. It was conceded on the part of the libellant, that the respondent had no knowledge of Webster being on board the vessel till the vessel was beyond our jurisdiction.

So far as the liability of the master of the vessel is concerned for the debts of the person carried out of the Kingdom, without a passport, the present law is a re-enactment of the law of 1846. Our situation affords peculiar facilities for escape, and at this early day this provision was regarded as necessary to protect our people from loss by absconding debtors. It has afforded great protection, and secured the people from much trouble and anxiety from apprehension of escapes. In our reports we find but one suit founded upon this statute, and that in the case of Sawyer *vs.* Paty (vol. 1, Hawaiian Rep., 144), in which Chief Justice Lee says that "the language of the law is clear, direct and unmistakable, and cannot be violated with impunity. The burden is upon the master of the vessel to see that his passengers have the passports required by law, and if he neglects to do so, and takes them out of the Kingdom without such passport, he voluntarily assumes the responsibility of paying their debts."

But it is said that Harris has returned and was within the jurisdiction of the Court at the commencement of this suit, and, hence, that Sawyer has sustained no loss by his departure, and ought not to hold Paty responsible. That Sawyer has sustained no loss does not appear, and it is a matter we have no right to presume. But even granting that it were so, it would not relieve Captain Paty of the liability he has incurred to pay the debt. This statute was made *pro bono publico,* and its construction admits of no doubt.

The respondent says that he left in command of the "Comet" on notice of two or three hours, and that he did not know that Webster was on board till some two days after he left the port, and that he could not return without serious injury and damage to the parties interested in the freight as well as in the vessel.

It will hardly be seriously contended that this law may be violated with impunity by substituting a new master at the last moment of sailing. In this case the Court is aware that there was no intention of this sort, but the consequences are none the less serious to the libellant, and it is very clear that it would be very easy to make the law nugatory if this was regarded as a defense. It would have been inconvenient and a loss to have returned, but when a loss is to be incurred, who should bear it, the person who has violated the law, or the one for whose protection against injury the law was enacted?

The counsel for the respondent contends further "that as he did not take Webster out of the Kingdom voluntarily and knowingly, that he has not violated the law, and is therefore not liable." What then is the true construction of the statute? Its language is without qualification, and the ruling of the Court on its construction is clear and explicit as applicable to the case of a passenger knowingly received on board without a passport, and conveyed beyond our jurisdiction. And this is the distinction in the two cases. The law makes it imperative on all persons who have resided here thirty days to apply to the Collector for a passport when they wish to leave the Kingdom. In case of indebtedness, as in this case, the party may file his objection to a passport being granted, and if one is granted, the Collector can cancel it for cause, and if he refuses to do so, makes himself liable to a fine. It is further provided, that if any person who shall depart from any port in the Kingdom with the intention of leaving the same, without first obtaining a passport, shall be subject to a fine not exceeding $100, in the discretion of the Court, and then follows the provision imposing the liability of the master, or commanding officer, of a vessel. The law is drawn with care, providing every precaution against escape, and with this intent so clearly given, any construction which would defeat its effectiveness would certainly be as much against its spirit as it is clearly against its letter. It will be seen that the law is very rigid on the subject of passports, and, being so, the liability of the master of a vessel, who should disregard their necessity for passengers, would seem to be inevitable, or the law would be wholly inefficient, and the care used to prevent passports being given idle.

While Courts will not question or control the authority of a statute, if clear and explicit in its terms, and in accordance with the Constitution of the Kingdom, it is still their duty to give them a reasonable construction. They will not regard it within the contemplation of a law, that consequences of injustice or absurdity should follow from the terms of any law. The intention of the Legislature in the statute, upon which the libellant relies, is very clear; it was designed to protect our people here from injury by absconding debtors, our situation being insular, and the facilities being so great for escape, some provision was deemed necessary to prevent loss. Literally the law admits of but one construction. If a master of a vessel conveys a man out of the Kingdom, he is liable for his debts.

On the part of the respondent it is contended, that if being a penal statute, it must be proved that he knew that the man was on board of his vessel when he left the Kingdom. This is not in accordance even with the fully recognized doctrine of a criminal negligence in cases of omission. In the case of Regina *vs.* Lawe, 4 Cox, C. C., Lord Campbell, Chief Justice, says: "I am clearly of opinion that an act of omission as well as of commission may be so criminal as to be the subject of an indictment of manslaughter." In this case, the law prohibited the respondent from carrying Webster out of the Kingdom without a passport. He admits that he has done it, and for justification says that he was not aware that he was on board. Every person is bound by law to do his whole duty. Has the respondent performed all those acts which the law requires? Has he done so in the present case? Had he made a thorough and faithful search of the vessel previous to passing the boundaries of our jurisdiction, or taken any other course which had evinced a careful and thorough diligence in guarding against persons making their escape, I should have regarded it as a compliance with the law. I regard this as a more liberal construction of the statute than that of the Court in the case of Sawyer *vs.* Paty.

If the position taken by the Counsel for the respondent is sound, it would completely defeat all laws for acts of omission. When the law prohibits any act on board from being done, the most literal construction which can be given in its interpreta-

tion is that the utmost diligence and care was taken to prevent it. This law, which the Legislature took so much pains to guard, would be, with this construction, utterly ineffective. It would not require much precaution or self-denial, on the part of the person desirous of escaping, to conceal himself till the vessel had passed out of the jurisdiction, and the master need never be compromised. This is not the letter of the law, which is stringent, nor is it the spirit, for that seeks to protect our people against loss by absconding debtors, by the utmost vigilance. It is as sound in law as it is in ethics, not to leave undone those things which ought to be done, as to do those things which ought not to have been done. Negligence is often as fatal in its results as a positive act of commission.

I regard the law as clear and explicit in the one case as the other—both civilly and criminally; that the former more frequently escape, is inevitable from the nature of the evidence applicable to the case. It is unnecessary to discuss the different degrees of negligence requisite to create a liability in criminal and civil cases. If there is a difference it appears *criminalitee.*

It is contended further that the evidence must show a criminal intent to carry Webster out of the Kingdom. In every instance of negligence by omission amounting to crime, the rule of the law is this : If the neglect was so willful and gross as to satisfy the jury that the death of the party was intended, the crime is murder; but if death was not intended, but was the result of carelessness, it is only manslaughter. This principle applies to all that class of cases where neglect to provide suitable care, medical attendance or provision, to those persons whom it is our duty to protect and care for, and which result in fatal consequences. So, if a person whose duty it is to give the proper signal to a railway train in motion, whereby a collision took place and a passenger was killed, although not intentional, still it is criminal—but in lesser degree than when willfully and intentionally done. If this is the law *criminaltee,* it is a *fortiori curilitee,* unless the negligence of the injured party has concurred in producing the result, for in this consists the distinction between civil and criminal proceedings. In this case it appears that the libellant took the legal steps to prevent

a passport being given, and none was given; there is no pretence that he has done or omitted to do anything to compromise his rights. I do not say that anything was incumbent on him to do, as the master of a vessel is prohibited from carrying a person out of the Kingdom who has not a passport. A notice to the Collector not to issue one seems to fulfill the requirement of the statute. The simple question to a person who applies for a passage is, have you a passport? if not, it is the duty of the master to decline to take him. · It is by legal means that the intention of the Legislature must be ascertained, and by a careful reference to the whole statute, its clearly defined purposes and objects, as well as to the specific section by which the liability is incurred. And it would seem there could be no doubt of the intention. This is the only interpretation which can give effect to its different provisions. And is it not reasonable and in accordance with its objects? When governed by the principles of construction which I have given it is easily complied with. The salutary rule which governs society, that all men should obey the laws, and thereby impart a mutual protection to all its members, forcibly applies to it.

Let judgment be entered for the libellant for $64, and costs.

Mr. Montgomery and Mr. Harris for the plaintiff.

Mr. Bates for the defendant.